MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
DANIEL SILVA A.K.A. APOLINAR SILVA,
FERNANDO TORNADO PEREZ, and
MANUEL CRUZ, *individually and on behalf*
*of others similarly situated,*

                         *Plaintiffs*,

            -against-

KINJO INC.  (D/B/A GUNBAE), ANDY
LAU, SHIRLEY CHEUNG, GARY
CHEUNG, KAREN NG, HYUNG RAE CHO,
DAKOTA PETITO, SAMMY DOE,
RAYMOND DOE, JUN DOE, and ADAM
KIM,

                       *Defendants.*
------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b) AND RULE 23**
**CLASS ACTION**

**ECF Case**

       Plaintiffs Daniel Silva a.k.a. Apolinar Silva, Fernando Tornado Perez, and Manuel Cruz ,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against Kinjo Inc. (d/b/a Gunbae), ("Defendant Corporation"), Andy Lau,  Shirley Cheung,  Gary

Cheung,  Karen Ng,  Hyung Rae Cho,  Dakota Petito,  Sammy Doe,  Raymond Doe,  Jun Doe, and

Adam Kim, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Kinjo Inc. (d/b/a Gunbae), Andy Lau, Shirley Cheung, Gary Cheung, Karen Ng, Hyung Rae Cho, Dakota Petito, Sammy Doe, Raymond Doe, Jun Doe, and Adam Kim.

2.       Defendants own, operate, or control a Korean BBQ, located at 67 Murray Street, New York, NY 10007 under the name "Gunbae".

3.      Upon information and belief, individual Defendants Andy Lau, Shirley Cheung, Gary Cheung, Karen Ng, Hyung Rae Cho, Dakota Petito, Sammy Doe, Raymond Doe, Jun Doe, and Adam Kim, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers at the restaurant located at 67 Murray Street, New York, NY 10007.

5.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to placing rice and salads in big containers, putting kimchi in containers, bringing up containers from the basement, packing deliveries, cleaning the kimchi, bringing products from the basement to the restaurant, cleaning the refrigerator, cleaning food stations and cutting vegetables (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

13.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

14.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.     Plaintiffs seek certification of this action as a class action under Rule 23 and collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants

operate a Korean BBQ located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

20.     Plaintiff Daniel Silva a.k.a. Apolinar Silva ("Plaintiff Silva" or "Mr. Silva") is an adult individual residing in Bronx County, New York.

21.     Plaintiff Silva was employed by Defendants at Gunbae Tribeca from approximately February 2017 until on or about June 2019.

22.     Plaintiff Fernando Tornado Perez ("Plaintiff Tornado" or "Mr. Tornado") is an adult individual residing in Kings County, New York.

23.     Plaintiff Tornado was employed by Defendants at Gunbae Tribeca from approximately March 2016 until on or about December 2016.

24.     Plaintiff Manuel Cruz ("Plaintiff Cruz" or "Mr. Cruz") is an adult individual residing in Bronx County, New York.

25.     Plaintiff Cruz was employed by Defendants at Gunbae Tribeca from approximately August 2016 until on or about November 18, 2018.

### *Defendants*

26.     At all relevant times, Defendants owned, operated, or controlled a Korean BBQ, located at 67 Murray Street, New York, NY 10007 under the name "Gunbae".

27.     Upon information and belief, Kinjo Inc. (d/b/a Gunbae) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 67 Murray Street, New York, NY 10007.

28.     Defendant Andy Lau is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Andy Lau is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Andy Lau possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.     Defendant Shirley Cheung is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Shirley Cheung is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Shirley Cheung possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.     Defendant Gary Cheung is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Gary Cheung is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Gary Cheung possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.     Defendant Karen Ng is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Karen Ng is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Karen Ng possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.     Defendant Hyung Rae Cho is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Hyung Rae Cho is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Hyung Rae Cho possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

33.     Defendant Dakota Petito is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Dakota Petito is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Dakota Petito possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

34.     Defendant Sammy Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Sammy Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Sammy Doe possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

35.     Defendant Raymond Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Raymond Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Raymond Doe possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

36.     Defendant Jun Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jun Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Jun Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.     Defendant Adam Kim is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Adam Kim is sued individually in his capacity as a manager of Defendant Corporation. Defendant Adam Kim possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

38.     Defendants operate a Korean BBQ located in The Tribeca section of Manhattan in New York City.

39.     Individual Defendants, Andy Lau, Shirley Cheung, Gary Cheung, Karen Ng, Hyung Rae Cho, Dakota Petito, Sammy Doe, Raymond Doe, Jun Doe, and Adam Kim, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

40.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

41.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

42.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

43.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

44.    Upon information and belief, Individual Defendants Andy Lau, Shirley Cheung, Gary Cheung, Karen Ng, Hyung Rae Cho, Dakota Petito, Sammy Doe, Raymond Doe and Adam Kim operate Defendant Corporation as either an alter ego of  themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of their own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

45.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

46.    In each year from 2016 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

47.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of  New York.

*Individual Plaintiffs*

48.    Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

49.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Daniel Silva a.k.a. Apolinar Silva*

50.    Plaintiff Silva was employed by Defendants from approximately February 2017 until on or about June 2019.

51.    Defendants ostensibly employed Plaintiff Silva as a delivery worker.

52.     However, Plaintiff Silva was also required to spend a significant portion of his work day performing the non-tipped duties described above.

53.     Although Plaintiff Silva ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

54.     Plaintiff Silva regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

55.     Plaintiff Silva's work duties required neither discretion nor independent judgment.

56.     From approximately February 2017 until on or about October 2018, Plaintiff Silva worked from approximately 4:30 p.m. until on or about 11:00 p.m. to 11:30 p.m., Mondays through Fridays and from approximately 11:30 a.m. until on or about 11:30 p.m., Saturdays (typically 44.5 to 54 hours per week).

57.     From approximately October 2018 until on or about June 2019, Plaintiff Silva worked from approximately 4:30 p.m. until on or about 11:00 p.m. to 11:30 p.m., 3 days a week and from approximately 11:30 a.m. until on or about 11:30 p.m., one day a week (typically 31.5 to 33 hours per week).

58.     Throughout his employment, Defendants paid Plaintiff Silva his wages by check.

59.     From approximately February 2017 until on or about December 2017, Defendants paid Plaintiff Silva $7.50 per hour.

60.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Silva $8.65 per hour.

61.     From approximately January 2019 until on or about June 2019, Defendants paid Plaintiff Silva $10.00 per hour.

62.     Plaintiff Silva's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

63.     For example, Defendants required Plaintiff Silva to work an additional 30 minute to 1 hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

64.     Defendants never granted Plaintiff Silva any breaks or meal periods of any kind.

65.     From approximately February 2017 until on or about December 2017, Defendants deducted $12 per week from Plaintiff Silva's weekly paycheck for meals he never ate.

66.     Plaintiff Silva was never notified by Defendants that his tips were being included as an offset for wages.

67.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Silva's wages.

68.     Defendants withheld a portion of Plaintiff Silva's tips; specifically, Defendants withheld a portion of his weekly tips (approximately $20 per week).

69.     Plaintiff Silva was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

70.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Silva regarding overtime and wages under the FLSA and NYLL.

71.     Defendants did not provide Plaintiff Silva an accurate statement of wages, as required by NYLL 195(3).

72.     In fact, Defendants adjusted Plaintiff Silva's paystubs so that they reflected inaccurate wages and hours worked.

73.     Defendants did not give any notice to Plaintiff Silva, in English and in Spanish (Plaintiff Silva's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

74.     Defendants required Plaintiff Silva to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, a chain, one delivery bag and bicycle's lights.

*Plaintiff Fernando Tornado Perez*

75.     Plaintiff Tornado was employed by Defendants from approximately March 2016 until on or about December 2016.

76.     Defendants ostensibly employed Plaintiff Tornado as a delivery worker.

77.     However, Plaintiff Tornado was also required to spend a significant portion of his work day performing the non-tipped duties described above.

78.     Although Plaintiff Tornado ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

79.     Plaintiff Tornado regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

80.     Plaintiff Tornado's work duties required neither discretion nor independent judgment.

81.     From approximately March 2016 until on or about December 2016, Plaintiff Tornado worked from approximately 4:30 p.m. until on or about 10:30 p.m., 4 days a week and from

- 14 -

approximately 4:30 p.m. until on or about 10:30 p.m. to 11:00 p.m., 2 days a week (typically 36 to 37 hours per week).

82.     Throughout his employment, Defendants paid Plaintiff Tornado his wages by check.

83.     From approximately March 2016 until on or about December 2016, Defendants paid Plaintiff Tornado $7.50 per hour.

84.     Plaintiff Tornado's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

85.     For example, Defendants required Plaintiff Tornado to work an additional 30 minutes past his scheduled departure time 2 days a week, and did not pay him for the additional time he worked.

86.     Defendants never granted Plaintiff Tornado any breaks or meal periods of any kind.

87.     Plaintiff Tornado was never notified by Defendants that his tips were being included as an offset for wages.

88.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Tornado's wages.

89.     Plaintiff Tornado was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

90.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Tornado regarding overtime and wages under the FLSA and NYLL.

91.     Defendants did not provide Plaintiff Tornado an accurate statement of wages, as required by NYLL 195(3).

92.     In fact, Defendants adjusted Plaintiff Tornado's paystubs so that they reflected inaccurate wages and hours worked.

93.     Defendants did not give any notice to Plaintiff Tornado, in English and in Spanish (Plaintiff Tornado's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

94.     Defendants required Plaintiff Tornado to purchase "tools of the trade" with his own funds—including one bicycle, a helmet and a vest.

*Plaintiff Manuel Cruz*

95.     Plaintiff Cruz was employed by Defendants from approximately August 2016 until on or about November 18, 2018.

96.     Defendants ostensibly employed Plaintiff Cruz as a delivery worker.

97.     However, Plaintiff Cruz was also required to spend a significant portion of his work day performing the non-tipped duties described above.

98.     Although Plaintiff Cruz ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

99.     Plaintiff Cruz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

100.     Plaintiff Cruz's work duties required neither discretion nor independent judgment.

101.     From approximately August 2016 until on or about November 2018, Plaintiff Cruz worked from approximately 4:30 p.m. until on or about 11:00 p.m., 4 days a week and from approximately 4:30 p.m. until on or about 10:30 p.m., 2 days a week (typically 38 hours per week).

102.     Throughout his employment, Defendants paid Plaintiff Cruz his wages by check.

103.    From approximately August 2016 until on or about December 2017, Defendants paid Plaintiff Cruz $7.50 per hour.

104.    From approximately January 2018 until on or about November 2018, Defendants paid Plaintiff Cruz $8.65 per hour.

105.    Plaintiff Cruz's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

106.    For example, Defendants required Plaintiff Cruz to work an additional 30 minutes past his scheduled departure time 4 days a week, and did not pay him for the additional time he worked.

107.    Defendants never granted Plaintiff Cruz any breaks or meal periods of any kind.

108.    Plaintiff Cruz was never notified by Defendants that his tips were being included as an offset for wages.

109.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cruz's wages.

110.    Defendants withheld a portion of Plaintiff Cruz's tips; specifically, Defendants withheld a portion of all the tips customers paid through Seamless.

111.    Plaintiff Cruz was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

112.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cruz regarding overtime and wages under the FLSA and NYLL.

113.    Defendants did not provide Plaintiff Cruz an accurate statement of wages, as required by NYLL 195(3).

114.    In fact, Defendants adjusted Plaintiff Cruz's paystubs so that they reflected inaccurate wages and hours worked.

115.    Defendants did not give any notice to Plaintiff Cruz, in English and in Spanish (Plaintiff Cruz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

116.    Defendants required Plaintiff Cruz to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, a vest and a lock.

*Defendants' General Employment Practices*

117.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

118.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

119.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

120.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

121.    Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

122.    Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

123.    Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

124.    Plaintiffs and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

125.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

126.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

127.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

128.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

129.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

130.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

131.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

132.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

133.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

134.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

135.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

136.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

137.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

138.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

139.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the

employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

140.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

141.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

142.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

143.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

144.    Plaintiffs bring their New York Labor Law minimum wage, wage deduction and liquidated damages claims on behalf of all persons who were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to

entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

145.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

146.    There are questions of law and fact common to the Class including:

a)  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d)  Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage within the meaning of the New York Labor Law;

e)  Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

f)  At what common rate, or rates subject to common methods of calculation, were Defendants required to pay the class members for their work; and

g)  What were the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

147.   The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

148.   The representative parties will fairly and adequately protect the interests of the Class and had no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

149.   The common questions of law and fact predominate over questions affecting only individual members.

150.   A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

151.   Defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

152.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

153.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

154.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

155.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

156.     Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

157.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

158.     Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

159.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

160. Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

161. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

162. Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

163. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

164. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

165. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the FLSA and Rule 23 Class members) less than the minimum wage.

166. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

167. Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

168.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

169.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

170.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

171.     Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

172.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.     Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

174.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

175.    Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

176.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

177.    Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 Class members) with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

178.    Defendants are liable to each Plaintiff (and the FLSA and Rule 23 Class members) in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

179.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

180.     With each payment of wages, Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 Class members) with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

181.     Defendants are liable to each Plaintiff (and the FLSA and Rule 23 Class members) in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

182.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

183.     Defendants required Plaintiffs (and the FLSA and Rule 23 Class members) to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

184.     Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

**OF THE NEW YORK LABOR LAW**

185.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

186.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

187.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

188.     Defendants unlawfully misappropriated a portion of Plaintiffs' (and the FLSA and Rule 23 Class members') tips that were received from customers.

189.     Defendants knowingly and intentionally retained a portion of Plaintiffs' (and the FLSA and Rule 23 Class members') tips in violations of the NYLL and supporting Department of Labor Regulations.

190.     Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

**UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION**

**OF THE NEW YORK LABOR LAW**

191.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

192.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

193.     Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

194.     The deductions made from Plaintiffs' wages were not authorized or required by law.

195.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)      Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs(and the FLSA and Rule 23 Class members);

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs(and the FLSA and Rule 23 Class members);

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs(and the FLSA and Rule 23 Class members);

(k)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' (and the FLSA and Rule 23 Class members') compensation, hours, wages and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs(and the FLSA and Rule 23 Class members);

(m)      Awarding Plaintiffs (and the FLSA and Rule 23 Class members) damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions

or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)    Awarding Plaintiffs (and the FLSA and Rule 23 Class members) damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)    Awarding Plaintiffs (and the FLSA and Rule 23 Class members) liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)    Awarding Plaintiffs and the FLSA and Rule 23 Class members pre-judgment and post-judgment interest as applicable;

(q)    Awarding Plaintiffs and the FLSA and Rule 23 Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       June 9, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      /s/ Michael Faillace
          Michael Faillace [MF-8436]
          60 East 42nd Street, Suite 4510
          New York, New York 10165
          Telephone: (212) 317-1200
          Facsimile: (212) 317-1620
          *Attorneys for Plaintiffs*